**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

JAMES ISIAH MURRAY,

       Petitioner,

-vs-                                             Case No.  8:09-CV-1822-T-27TBM

SECRETARY, DEPARTMENT
OF CORRECTIONS,

       Respondent.

_____/

**ORDER**

      Petitioner, an inmate in a Florida penal institution proceeding *pro se*, filed a Petition for Writ

of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("petition") challenging convictions for first-degree

murder, two counts of robbery with a firearm, burglary of a conveyance, and grand theft motor

vehicle entered in 2002 by the Thirteenth Judicial Circuit Court, Hillsborough County, Florida (Dkt.

1).  Respondent filed a response to the petition (Dkt. 19).  Petitioner filed a reply to the response

(Dkt. 24).

      Respondent asserts no challenge to the petition's timeliness.  The matter is now before the

Court for consideration of Petitioner's claims.   An evidentiary hearing is not required for the

disposition of this matter.  Rules Governing Section 2254 Cases, Rule 8(a) (2011).

**PROCEDURAL HISTORY**

      On July 11, 2001, Petitioner and three co-defendants were indicted by the Grand Jury for

first-degree murder, two counts of armed robbery, burglary of a conveyance, and grand theft motor

vehicle (Respondent's Exh 21, Vol. I at record pages 17-21).  Following a jury trial, the jury found

Petitioner  guilty of first-degree murder, two counts of robbery with a firearm, burglary of a conveyance, and grand theft motor vehicle (Id. at 72-74).  On December 5, 2002, the trial court sentenced Petitioner to life imprisonment on the first-degree murder and two robbery convictions, and five years imprisonment on the burglary of a conveyance and grand theft motor vehicle convictions (Id. at 77-91).  The appellate court affirmed the convictions and sentences on May 28, 2004 (Respondent's Exh 3); *Murray v. State*, 875 So. 2d 615 (Fla. 2d DCA 2004)[table].

On March 31, 2005, Petitioner filed a Motion for Post Conviction Relief pursuant to Rule 3.850, Fla. R. Crim. P. ("3.850 motion") in which he raised nine grounds for relief (Respondent's Exh 2).  On May 10, 2006, the post conviction court summarily denied five of the grounds, and directed the State to respond to the remaining grounds (Respondent's Exh 6). The State filed its response on May 26, 2006 (Respondent's Exh 7). On May 30, 2006, Petitioner filed a motion to amend the 3.850 motion with four additional claims (Respondent's Exh 8).  On August 14, 2006, the trial court issued an order granting an evidentiary hearing on the remaining grounds of the original motion, and denying the motion to amend (Respondent's Exh 9). On September 21, 2006, Petitioner filed a motion for reconsideration of the court's order denying his amended motion (Respondent's Exh 10). On October 9, 2006, the court granted the motion for reconsideration, summarily denied three of the grounds of the amended motion, reserved ruling on one ground (a cumulative error claim), and directed the State to respond to the remaining ground (Respondent's Exh 11). After the State filed its response (Respondent's Exh 12), the court summarily denied the remaining ground of the amended motion (Respondent's Exh 13). Following an evidentiary hearing on September 17, 2007 (Respondent's Exh 14), on April 15, 2008, the court denied the remaining grounds of the original 3.850 motion, and the ground of the amended motion which the court had

reserved ruling on (Respondent's Exh 15). On July 10, 2009, the appellate court affirmed the post conviction court's denial of postconviction relief (Respondent's Exh 19); *Murray v. State*, 16 So. 3d 826 (Fla. 2d DCA 2009). The appellate court mandate issued on September 11, 2009 (Respondent's Exh 20).

Petitioner filed his § 2254 petition in this Court on September 1, 2009 (Dkt. 1).[1] The petition raises fourteen grounds for relief.

## STANDARDS OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court's review of the state court's factual findings is highly deferential. Those findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). It is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." *Id. Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

**Ineffective Assistance of Counsel**

To have a facially valid claim alleging ineffective assistance of counsel, Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part

---

[1]Although Petitioner's petition was received by this Court on September 4, 2009, Petitioner delivered his petition to prison officials for mailing on September 1, 2009 (Dkt. 1 at p. 42). Under the mailbox rule set out in *Houston v. Lack*, 487 U.S. 266 (1988), a document is deemed filed by a *pro se* prisoner when it is delivered to prison authorities for forwarding to the court.

test requires Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component. *Id.* at 697.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011). As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (citations omitted).

**Procedural Default**

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. 2254(b)(1)(A); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also, Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Duncan v. Henry*, 513 U.S. 364 (1995) ("[E]xhaustion of

state remedies requires that the state prisoner 'fairly present' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]'") (citation omitted).

Under the procedural default doctrine, "if the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." *Henderson*, 353 F.3d at 891 (quoting *Judd v. Haley*, 250 F.3d at 1313).

Pre-AEDPA decisions from the Supreme Court establish the framework governing procedural default in federal habeas cases. A procedural default will only be excused in two narrow circumstances. First, Petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires Petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. *Henderson*, 353 F.3d at 892; *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995).

To show "prejudice," Petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).  Petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different.

*Henderson*, 353 F.3d at 892.

Second, Petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Henderson*, 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson*, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001) (citing *Calderon v. Thompson*, 523 U.S. 538, 559 (1998)). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "'to be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon*, 523 U.S. at 559 (quoting *Schlup*, 513 U.S. at 324) (explaining "given the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted).

## DISCUSSION

### Grounds One, Two, Three, and Four

In Grounds One, Two, Three, and Four of the petition, Petitioner asserts that he was denied due process, a fair trial, and equal protection under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution: 1) when the state trial court denied his motion for a new trial (Ground One), and failed to sustain his objections or grant his motion for mistrial (Ground Two); 2) because the convictions were against the weight of the evidence (Ground Three); and 3) when the prosecutor "improperly" asked the victim whether she was able to determine the perpetrators' race

"by any type of. . .dialect." (Ground Four).[2]  Respondent argues that these claims are unexhausted, and procedurally barred from review in this court, because Petitioner did not present the federal nature of the claims to the state appellate court on direct appeal.  Respondent further argues that Grounds Two, Three, and Four are procedurally barred because the claims were procedurally defaulted in state court since the alleged errors were not preserved for appellate review.  Finally, Respondent argues that this Court lacks subject matter jurisdiction to address these claims because they do not present issues "of federal constitutional magnitude." (See Dkt. 19 at 15-21).

In his reply, Petitioner argues that he did exhaust Grounds One through Four in state court. Specifically, he argues that (with respect to Grounds One through Four) in his Initial Brief on direct appeal, he either "alleged facts well within the mainstream of constitutional law," "phrased the claims" in terms of federal constitutional law, or relied on state cases which employed federal constitutional analysis.  He also argues that Grounds Two, Three, and Four are not procedurally barred because: 1) defense counsel did make an objection during trial with respect to the issue in Ground Two; 2) a claim of insufficiency of the evidence may be reviewed on appeal without a specific objection at trial;[3] and 3) Ground Four was raised as "fundamental error," which may be raised for the first time on appeal  (See Dkt. 24 at 2-4).

A petitioner must present each claim to a state court before raising the claim in federal court. "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' *federal claims* to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its

---

[2]The perpetrators wore masks and gloves at the time of the crime (Respondent's Exh 1 at 4-6).

[3]The Court notes that in Argument III of his Initial Brief, Petitioner did not argue that there was insufficient evidence to convict him of the charges (Id.).  Instead, the argument was that the verdict was "against the weight of the evidence." (Id. at 23).

prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (emphasis added), *quoting*

*Picard v. Connor*, 404 U.S. 270, 275 (1971). *See also Upshaw v. Singletary*, 70 F.3d 576, 578 (11th

Cir. 1995) ("[T]he applicant must have fairly apprised the highest court of his state with the

appropriate jurisdiction of the federal rights which allegedly were violated.").

In Argument I of his Initial Brief on direct appeal, Petitioner raised the claim that the trial

court erred in denying his motion for a new trial "because the victim was not within the nexus of the

felony murder rule." (Respondent's Exh 1 at 17-19). Petitioner argued that the State did not prove

that the killing was "closely connected" to the robbery, as required by Florida law (Id.). In Argument

II of his Initial Brief, Petitioner argued that the trial court erred in overruling his objection to the

victim's testimony that the guns found in Petitioner's home looked similar to the gun used during

the crime, and in failing to grant a mistrial because the State never "tied up" the evidence regarding

the guns (Id. at 19-22). In support of this claim, Petitioner argued that the victim's testimony

regarding the gun was irrelevant and inadmissible under Florida law, and that pursuant to Florida

law, the trial court abused its discretion when it failed to give a curative instruction or grant a mistrial

(Id.). In Argument III of the Initial Brief, Petitioner asserted that the convictions should be

overturned because the verdict was against the weight of the evidence (Id. at 22-25). In support of

this claim, Petitioner argued that Rule 3.600(a)(2), Florida Rules of Criminal Procedure, provides

in pertinent part that the trial court shall grant a new trial if "[t]he verdict is contrary to law or the

weight of the evidence." In Argument IV of the Initial Brief, Petitioner argued that the prosecutor

committed misconduct when he asked the victim whether she was able to draw any conclusion as

to the perpetrators' race by their "dialect." He further argued that the prosecutor's question, coupled

with the victim's response that she concluded the perpetrators were black males, amounted to

fundamental error, and denied him a fair trial and due process (Id. at 25-28).

Petitioner did not assert federal constitutional claims in Arguments I through IV of his Initial Brief (Id.).   Petitioner cited no federal cases, and he made no reference to any constitutional provision or federal law with respect to these arguments.   Instead, his substantive arguments addressed only Florida law and Florida cases, none of which discussed the federal constitution.[4] Petitioner's cursory and vague statement at the conclusion of his Initial Brief that he "did not receive a fair trial as required by the U.S. Constitution. . ." (Id. at 32) was no more than a "needle in a haystack," and insufficient to present fairly to the state appellate court the federal constitutional issues now before this Court.   *See McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005) (exhaustion requires a habeas petitioner to do more than scatter some makeshift needles in the haystack of the state court record) (citation omitted).   *See also Anderson v. Harless*, 459 U.S. 4 (1982) (petitioner's general appeal to a constitutional guarantee as broad as "due process" is not enough to present the "substance" of such a claim to a state court); *Zeigler v. Crosby*, 345 F.3d 1300,

---

[4]Although Petitioner cited to *Marsh v. State*, 202 So. 2d 222 (Fla. 3d DCA 1967) which cited to a Florida Supreme Court case that quoted a case from United States Supreme Court, that was not sufficient notice to the state court that he was presenting a federal claim.   *In Baldwin v. Reese*, 124 S. Ct. 1347 (2004), the Supreme Court held that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."   *Id*. at 1351. Argument IV of the Initial Brief did not alert the appellate court to the presence of a federal claim.   Instead, the appellate court would have had to "read beyond" the brief to find any mention of federal law, i.e., the *Marsh* opinion. Moreover, the *Baldwin* court stated that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id*. Petitioner asserted no federal authority supporting his claim, did not label his claim as "federal," and none of the cases he cited were decided on federal grounds. Consequently, Petitioner failed to exhaust the federal claim he asserts in Ground Four of the petition.

1308 n.5 (11th Cir. Fla. 2003) (petitioner's state court brief which stated that he "was denied due process and a fair trial . . ." was "insufficient to present fairly to the state court the federal constitutional issue" because "this language could just be asserting a fair trial claim under the Florida Constitution and Florida's Due Process Clause"). Therefore, with respect to Grounds One through Four of the instant petition, Petitioner did not fairly apprise the state court of the federal nature of his claims.[5]  He therefore failed to exhaust his state court remedies, and is procedurally barred from raising Grounds One through Four in his federal habeas petition.[6]

Moreover, Grounds Three and Four are procedurally defaulted because they were not preserved for appeal.[7]  A claim is procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (the independent and adequate state ground doctrine "applies to bar federal habeas when a state court declined to address a prisoner's federal claims

---

[5]It would be futile to dismiss this case to give Petitioner the opportunity to exhaust his federal claims because they could have and should have been raised on direct appeal. *See Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1989) (where dismissal to allow exhaustion of unexhausted claims would be futile due to state procedural bar, claims are considered procedurally barred in federal court).  Florida's state procedural rules precluding a second direct appeal, and the time limitations for bringing an appeal, bar Petitioner's returning to state court to present the claims. See Fla. R. App. P. 9.110(b).

[6]Petitioner has not alleged or shown either cause excusing the default or actual prejudice resulting from the bar. Further, he has not alleged or shown that he is entitled to the fundamental miscarriage of justice exception.

[7]Respondent argues that Ground Two also is procedurally barred because defense counsel never moved for a mistrial or requested a curative instruction after the State allegedly failed to "tie up" the gun evidence (see Respondent's Exh 2 at 8).  During a bench conference, defense counsel objected to the prosecutor asking the victim questions about the guns that were found in Petitioner's house, because she could only testify that the guns looked similar to the gun she saw during the commission of the robbery (Respondent's Exh 21, Vol. II at 438-42).  In Argument II of his Initial Brief, Petitioner argued that the trial court erred "in not granting a mistrial, or at least granting Appellant's objection with a curative instruction." (Respondent's Exh 1 at 20).  He further argued that "the trial court should have either granted the objection and/or mistrial at that time[,]" i.e., when defense counsel objected during the bench conference (Id. at 21).  Finally, Petitioner argued that "the trial court's decision to overrule the defense's objection [to the victim's testimony regarding the guns]" was an abuse of discretion.  (Id. at 22). Therefore, because Petitioner objected to allowing the victim to testify regarding the guns, and in his Initial Brief he challenged the trial court's decision to overrule that objection, this Court concludes that the alleged error was preserved for appellate review.

because the prisoner had failed to meet a state procedural requirement"); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts.").

The State argued in its Answer Brief that the issue presented in Argument III of the Initial Brief, whether the convictions should be overturned because the verdict was against the weight of the evidence, was not properly preserved for appeal "because Appellant's counsel made a bare bones motion for a new trial on this issue." (Respondent's Exh 2 at 10). With respect to the issue presented in Argument IV of the Initial Brief, whether the prosecutor committed misconduct when he asked the victim if she was able to draw any conclusion as to the perpetrators' race by their "dialect," the State argued that the issue was not preserved for appellate review because no "objection, request for a curative instruction or motion for mistrial was made regarding the prosecutor's question or the witnesses [sic] response. . . [,]" and was not reviewable as fundamental error (Id. at 11). The State alternatively argued that the issues were without merit. (Id. at 10-11). The Florida Second District Court of Appeal *per curiam* affirmed Petitioner's convictions without an opinion (Respondent's Exh 3).

After trial, defense counsel filed a boilerplate motion for a new trial with respect to his "weight of the evidence" argument, stating only that: "The verdict is contrary to the law and the weight of the evidence." (Respondent's Exh 21, Vol. I at 93). In Florida, "a bare bones motion for a new trial. . .[is] not sufficient to preserve any specific argument for appellate review[,]" including the argument that "the trial court improperly denied [a] motion for a new trial because the manifest weight of the evidence did not support the verdict." *Stephens v. State*, 787 So. 2d 747, 754 (Fla. 2001) (citations omitted). In the motion for a new trial, and during the hearing on that motion,

counsel did not set forth facts showing or argue how the verdict was against the weight of the evidence (Respondent's Exh 21, Vol. I at 93; Vol. V at 1001-08).  Consequently, the issue was not preserved for appeal and was procedurally barred.

With respect to the issue of whether the prosecutor committed misconduct when he asked the victim if she was able to draw any conclusion as to the perpetrators' race by their "dialect," Petitioner admitted in his Initial Brief that defense counsel did not object to the question, or the victims' response (Respondent's Exh 1 at 6).  Moreover, there is no indication from the record that defense counsel requested a curative instruction or moved for a mistrial regarding the prosecutor's question, or the victim's response (see Respondent's Exh 2 at 11).

In Florida, to preserve an issue for appeal, a party must make a contemporaneous objection which states the legal ground for the objection and must obtain a ruling on that objection. *Harrell v. State*, 894 So. 2d 935, 940 (Fla. 2005) (citing *Steinhorst v. State*, 412 So. 2d 332, 338 (Fla. 1982)).  Further, "in order to preserve a claim based on improper prosecutorial conduct, defense counsel must object, and if the objection is sustained he must then request a curative instruction or mistrial[.]" *State v. Fritz*, 652 So. 2d 1243, 1244 (Fla. 5th DCA 1995).  Consequently, in order to be considered on appeal, this issue had to amount to fundamental error. *Harrell*, 894 So. 2d at 941 ("the sole exception to the contemporaneous objection requirement is fundamental error") (citation omitted).

Petitioner argued in his Initial Brief that the prosecutor's "misconduct" amounted to fundamental error (Respondent's Exh 1 at 28).  The fundamental error doctrine, however, is rarely applied in Florida.  *Harrell*, 894 So. 2d at 941.  "To be fundamental, an error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error."  *Id.* (citation and internal quotation marks omitted).

12

Prosecutorial misconduct "constitutes fundamental error when, but for the misconduct, the jury could not have reached the verdict it did." *Miller v. State*, 782 So. 2d 426, 432 (Fla. 2d DCA 2001) (citing *Kilgore v. State*, 688 So. 2d 895, 898 (Fla. 1996)).

As discussed in Ground Seven, *infra*, there is no indication that the prosecutor's question, or the victim's response to that question, was improper under either Florida or federal law. Moreover, in light of the testimony provided by Williams, Detective Rockhill, and Detective Adan implicating Petitioner in the crimes, this Court cannot find "that a verdict of guilty could not have been obtained without the assistance of the alleged error." *See Harrell*, 894 So. 2d at 941. Therefore, Petitioner has failed to show that the prosecutor's alleged misconduct amounted to fundamental error under Florida law. Consequently, the issue was not preserved for appeal and was procedurally barred.

This Court cannot presume that the state appellate court ignored its own procedural rules, and that the silent affirmance of Petitioner's convictions rests on the merits of Petitioner's claims, as opposed to the procedural default. Such a ruling does not suggest that the state court resolved the issues on the merits of the claims presented. *See Coleman*, 501 U.S. at 735-36; *Kight v. Singletary*, 50 F.3d 1539, 1544-1545 (11th Cir. 1995) (applying procedural bar where state court's summary dismissal did not explain basis for ruling); *Tower v. Phillips*, 7 F.3d 206, 209 (11th Cir. 1993) (applying bar where state court did not rule on claims presented); *Creed v. Dep't of Corr.*, 330 Fed. Appx. 771, 772 (11th Cir. 2009) (unpublished) ("We have held that, where the existence of a procedural bar is clear and no state court has given any rationale for its summary disposition of the defendant's claim, we will not presume that had the [state court] explained its reasoning, it would have reached the merits of [the defendant's] claim.") (citation and internal quotation marks omitted).

13

Petitioner does not show cause and prejudice to overcome his procedural default, and does not meet the miscarriage of justice exception.  Therefore, he is not entitled to federal habeas review of the claims raised in Grounds Three and Four.

Accordingly, for the foregoing reasons, Grounds One, Two, Three, and Four do not warrant relief.

**Ground Five**

In Ground Five, Petitioner asserts three claims of ineffective assistance of counsel, to wit, counsel was ineffective in failing to: 1) move to suppress Petitioner's statements to police; 2) move for a mistrial when the State failed to "tie up" the gun evidence; and 3) object to the prosecutor asking the victim whether she was able to draw any conclusion as to the perpetrators' race by their "dialect."  Petitioner raised these same claims in Grounds Six, Eight, and Eleven, *infra*.  The Court will address these claims in turn below.

Accordingly, Ground Five will be denied without prejudice to a review of the claims in Grounds Six, Eight, and Eleven.[8]

_____

[8]Petitioner may have raised these ineffective assistance claims in Ground Five to attempt to establish that he exhausted the claims by raising them on direct appeal.  In Florida, however, ineffective assistance of counsel claims generally are not reviewable on direct appeal.  *Loren v. State*, 601 So. 2d 271, 272 (Fla. 1st DCA 1992) ("[C]laims of ineffective assistance of counsel are generally not reviewable on direct appeal, but are properly raised in a motion for postconviction relief.").  The State's Answer Brief addressed the procedural rule (Respondent's Exh 2 at 13).  Florida courts consistently apply the procedural rule barring review of ineffective assistance of counsel claims on direct appeal, unless the ineffectiveness is apparent on the face of the record.  *See S.K. v. Dep't of Children & Family Servs. (In the Interest of E.K.)*, 33 So. 3d 125, 127 (Fla. 2d DCA 2010) ("[T]he courts have noted that direct appeal is not usually an effective mechanism through which to raise the issue of ineffective assistance of counsel because relief is available on direct appeal only when the ineffectiveness is apparent on the face of the record.") (citation omitted).  There is no indication that the alleged ineffectiveness was apparent on the face of the record.  Therefore, this Court presumes that the state appellate court applied the procedural bar, and did not resolve the ineffective assistance claims on the merits.  *See Kight* , 50 F.3d at 1544-1545.  Accordingly, Petitioner did not exhaust these claims in state court by raising them on direct appeal.  Nevertheless, Petitioner suffered no prejudice as he raised these claims in his 3.850 motion (Respondent's Exh 5).

**Grounds Six, Eight, Ten, Eleven, Twelve, and Fourteen**

Respondent argues that Grounds Six, Eight, Ten, Eleven, Twelve, and Fourteen are unexhausted and procedurally barred because Petitioner "abandoned those claims by failing to present specific argument in support of those claims [in] his initial brief in the postconviction appeal." (Dkt. 19 at 23). With respect to Grounds Six, Ten, Eleven, Twelve, and Fourteen, the Respondent's procedural default argument is rejected based on *Cunningham v. State*, 37 Fla. L. Weekly D 385  (Fla. 2nd DCA 2012).[9]

With respect to Ground Eight, however, this Court agrees that the claim is procedurally defaulted. Petitioner raised this claim as Ground Three of his  3.850 motion (Respondent's Exh 5 at 22-24). The post conviction court developed the claim at the evidentiary hearing (Respondent's Exh 9 at record page 215; Exh 14).  After the hearing, the post conviction court denied this claim (Respondent's Exh 15 at record pages 582-83).  On appeal, Petitioner did not raise this issue for review (Respondent's Exh 17). Because this claim was denied after an evidentiary hearing, Florida Rules of Appellate Procedure, Rule 9.141(b)(3)(C), required that Petitioner brief this claim on appeal in order to exhaust his state remedies. *Cunningham*, 37 Fla. L. Weekly D 385 (9.141(b)(3)(C) required briefing "for grounds that were denied after an evidentiary hearing."); *Cortes v. Gladish*, 216 Fed.Appx. 897, 899-900 (11th Cir. 2007) (unpublished) ("had Cortes received an evidentiary hearing [on issues raised in his 3.850 motion], his failure to address issues in his appellate brief

---

[9]Between December, 2000, and September, 2010, the Florida Second District Court of Appeal placed no obligation on post-conviction counsel to brief each claim summarily denied by the post-conviction court. The claims Petitioner raises in Grounds Six, Ten, Eleven, Twelve, and Fourteen in the instant petition, were summarily denied by the state post conviction court.  Petitioner's failure to brief the summarily denied claims on appeal caused no procedural default because the claims were automatically reviewed by the appellate court under that court's internal procedures  during that time. Because Petitioner's appeal of the post conviction court's denial of his post-conviction motion was filed in 2008, these claims are not procedurally defaulted.

would constitute a waiver").[10]   Therefore, Petitioner's failure to exhaust Ground Eight results in a procedural bar.   Petitioner has not overcome this procedural bar by showing cause and prejudice, or a fundamental miscarriage of justice.

Accordingly, Ground Eight does not warrant habeas relief.

### a. Ground Six

In Ground Six, Petitioner complains that counsel was ineffective in failing to move to suppress Petitioner's statements to police.   Petitioner avers that counsel should have challenged the statements on the following grounds: 1) the validity of the *Miranda* waiver form; 2) Petitioner's ability to knowingly and intelligently waive his *Miranda* rights based on his limited intelligence; 3) the totality of the circumstances surrounding the interrogation; and 4) whether the confession was the product of a free and deliberate choice rather than intimidation, coercion, or deception.

Initially, this claim is conclusory, unsupported by facts, and is subject to dismissal without an evidentiary hearing. *See Machibroda v. United States*, 368 U.S. 487 (1962) (conclusory allegations, unsupported by specifics, are subject to summary dismissal); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (a movant is not entitled to habeas corpus relief when the claims are merely conclusory allegations unsupported by specifics); *San Martin v. McNeil*, 633 F.3d 1257, 1271 (11th Cir. 2011) ("'An evidentiary hearing may be necessary where the material facts are in dispute, but a petitioner is not entitled to an evidentiary hearing when his claims are merely conclusory allegations unsupported by specifics.'") (quoting *Pugh v. Smith*, 465 F.3d 1295, 1300 (11th Cir. 2006)).   Petitioner asserts no facts to support his vague and conclusory allegations that he did not

---

[10]*See Coolen v. State*, 696 So. 2d 738, 742 n. 2 (Fla. 1997) (stating that a failure to fully brief and argue points on appeal "constitutes a waiver of these claims") (quoted in *Simmons v. State*, 934 So. 2d 1100, 1111 (Fla. 2006)).

knowingly and intelligently waive his *Miranda* rights, and his statements were coerced.[11]

Moreover, the claim does not warrant federal habeas relief. In Ground One of his state 3.850 motion, Petitioner asserted that after he was arrested and brought to the police station for questioning, he signed the *Miranda* rights waiver form, then police started to question him (Respondent's Exh 5 at record page 14). According to Petitioner, he only answered a few preliminary questions regarding his identity before informing the police that he knew nothing about the crime, and invoking his right to remain silent (Id.). Thereafter, the police terminated their interrogation of Petitioner (Id.). Subsequently in the 3.850 motion, Petitioner argued that counsel should have moved to suppress the statements he made to the police (which Petitioner claims he never made) on the same four conclusory grounds Petitioner asserts in the instant federal habeas petition (Id. at 16).

In denying the claim, the state post conviction court stated:

> In ground 1 Defendant argues counsel was ineffective for failure to file a motion to suppress Defendant's alleged confession. Defendant contends that after he signed a *Miranda* rights waiver form two police detectives attempted to question him regarding his involvement in a robbery and homicide. Defendant states he clearly indicated he had no knowledge of the crimes and invoked his right to remain silent. He alleges the two detectives later testified at trial and stated the Defendant confessed to the crimes for which he was tried. He asserts counsel's failure to file a motion to suppress the alleged confession ultimately led to the admission of "inadmissible evidence" and undermined the credibility and reliability of Defendant's own testimony. Defendant argues it is likely the jury would have found him not guilty but for counsel's failure to file a motion to suppress. (See motion, pages 7-11, attached.)
>
> When an ineffective assistance of counsel claim is alleged, a defendant must prove deficient performance by counsel and that the deficient performance prejudiced the defense such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland v. Washington, 466 U.S. 668, 686—687 and 694 (1984).

---

[11]Petitioner's challenge to the "validity" of the *Miranda* waiver form is addressed in Ground Twelve, *infra*.

A review of the trial transcript indicates Detective Luis Ricardo Adan and Detective Paul W. Rockhill both testified regarding Defendant's post-Miranda statements. They testified the Defendant stated he accompanied his co-defendants on 12 May 2001 while they rode around "looking for people to rob." They further indicated Defendant identified Anthony Francis as the person who held the gun and ordered the victims into the water. (See 3 December 2002 transcript, pages 589—597; and 4 December 2002 transcript, pages 717—720 and 730—733, attached.)

Defendant also testified regarding his post-*Miranda* interview with Detectives Rockhill and Adan. He stated he told the detectives he did not know anything about a robbery or homicide. He subsequently exercised his right to remain silent. (See 4 December 2002 transcript, pages 838 — 839, attached.)

Weighing the credibility of one witness against that of another is a function of the jury. See Hertz v. State, 803 So. 2d 629, 647 (Fla. 2001). To aid the jury in reaching its decision in this case, the State presented testimony from the two detectives while the defense presented conflicting testimony from the Defendant. The jury chose to believe Detective Adan's and Detective Rockhill's testimony. Counsel's performance was not deficient under the circumstances. [FN]. **Defendant is not entitled to relief on ground 1.**

> [FN] Defendant also asserts counsel should have filed the motion to suppress alleging he did not knowingly and intelligently waive his *Miranda* rights under the circumstances or that the alleged confession was a product of intimidation, coercion, or deception.  However, Defendant fails to provide specific facts to show how his post-*Miranda* statements were a product of coercion, deception or intimidation or that he did not knowingly and intelligently waive those rights (See motion, page 9, attached.)

(Respondent's Exh 11 at record pages 66-67) (emphasis in original).

The record demonstrates that the State court's decision was not contrary to or an unreasonable application of *Strickland*, and, was not an unreasonable determination of the facts based on the evidence presented. The court correctly cited to *Strickland* and found, in pertinent part, that Petitioner had not shown deficient performance because Petitioner failed to allege specific facts showing that he did not knowingly and intelligently waive his *Miranda* rights, and that his

confession was the product of coercion or intimidation. The post-conviction court's factual finding

was reasonable because Petitioner's allegations were conclusory in nature, and unsupported by any

facts showing that his confession was coerced, and the waiver of his rights was not knowingly and

intelligently made.  Accordingly, Petitioner is not entitled to relief on Ground Six.

### b. Ground Ten

In Ground Ten, Petitioner asserts that counsel was ineffective in failing to impeach the victim

with prior inconsistent statements regarding the description of the gun Petitioner possessed during

the crime.  Specifically, Petitioner asserts that counsel should have impeached the victim's trial

testimony that she thought that the stock of the gun used during the crime was wood, with her

statement to police that the stock of the gun "looked like it was metal."

Petitioner raised this claim in Ground Six of his 3.850 motion (Respondent's Exh 5 at record

pages 33-36).  In summarily denying the claim, the state post conviction court stated:

> In ground 6 Defendant alleges counsel was ineffective for failure to impeach
> Jennifer Simon when she proffered an inconsistent statement. He argues the victim
> stated the gun used during the robbery was similar to the one introduced at trial
> which had a wooden stock. Defendant asserts this testimony was inconsistent with
> the description she gave during her police interview (eight hours after the incident)
> when she stated the stock of the gun looked like it was metal. (See motion,
> pages 24—27, attached.)
>
> Ms. Simon testified regarding her knowledge of the gun used during the
> robbery as follows:
>
> MR. PRUNER: Okay. Um, do you remember the stock of the
> weapon? The — the butt part of it, for lack of a better phrase? Do you
> remember that at all?
>
> MS. SIMON: Vaguely. I think it was wood, but I'm not —
>
> MR. PRUNER: And the barrel of this weapon, did it appear short,
> medium, long?

MS. SIMON: I don't know. I don't remember.

[...]

MR. PRUNER: [...] Let me show you what's been marked for identification as State's Exhibits No. 13 (C), what appears to be a rifle.
        Can you tell us whether that appears similar or dissimilar, unlike the gun that you saw the camouflage masked man, um, threaten you and Mr. George with on that night?

MS. SIMON: It's similar.

MR. PRUNER: How — how would you compare the color of the stock, with the color of the stock of the — of the weapon that you saw that night? Similar or dissimilar?

MS. SIMON: Similar.

MR. PRUNER: And let me show you what's been marked for identification as State's Exhibit No. 13 — I believe this is gonna be "D" as in "dog" — and ask you — well I can't seem to get all of it out. Okay. Does this weapon appear to be similar or dissimilar to the — the weapon that you saw that night?

MS. SIMON: Similar.

MR PRUNER: And the color of the stock, um, and the wood on this, does it appear to be similar or dissimilar?

MS. SIMON: Similar.

MR PRUNER: <u>Now are — are you able, um, are you able at this date to be able to identify any firearm conclusively as that firearm that was held, um, pointed at you and Mr. George that night?</u>

MS. SIMON: **<u>No.</u>**

(See 3 December 2002 transcript, pages 438, and 443 — 444, attached.) The prosecutor specifically asked Ms. Simon whether she could identify the gun used in the robbery and she indicated she could not. In addition, counsel objected to the prosecutor's line of questioning.

MR. FRASER: I object to it. The fact that they look similar; I mean, so what?

THE COURT: Well, they could be dissimilar. They -

MR. FRASER: Well, I — I — see I didn't talk to her earlier, but I just object to confronting her with these rifles — because she is getting a little bit emotional here — confronting her with these emotional — these rifles, even though — because they just look similar over at the bench.

(See 3 December 2002 transcript, page 440, attached.) The Defendant later took the stand and testified that he did not have any involvement in the robbery or homicide whatsoever. (See 4 December 2002 transcript, pages 838 — 839, attached.)

The State also elicited testimony from Lucious Williams and Detective Melvin Duran, the police officer who searched Defendant's home. Mr. Williams stated the Defendant exited his home with a long-barrel .22 caliber rifle when his co-defendants arrived to pick him up on the evening of 12 May 2001. (See 4 December 2002 transcript, pages 764 — 765, attached.) Detective Duran stated that upon searching Defendant's home he located two .22 caliber rifles and a box of bullets under the sofa in the living room. He specifically identified State's Exhibits 13(C) and 13(D) as the two rifles removed from Defendant's residence during the search. (See 4 December 2002 transcript, pages 662 — 663, attached.) The Court notes these are the same exhibits used during the State's direct examination of the victim, Jennifer Simon, when she indicated the guns were "similar" to the ones used during the robbery. (See 3 December 2002 transcript, pages 443—444, attached.)

The victim indicated she could not conclusively identify the gun used on the night of the robbery. Counsel objected to her testimony that the guns provided during trial were "similar" to that used by the robbers on 12 May 2001. Detective Duran and Lucious Williams' testimony further indicated the Defendant was in possession and control of the guns used during the robbery. The jury had an opportunity to weigh the credibility of all witnesses prior to finding Defendant guilty. There is no indication counsel's performance was deficient under the circumstances. **Defendant is not entitled to relief on ground 6.**

(Respondent's Exh 6 at record pages 70-73) (emphasis in original).

During cross-examination of the victim, defense counsel did not reference any inconsistent statements relative to the victim's statements to law enforcement regarding the appearance of the

stock of the weapon (see Respondent's Exh 21, Vol. II at 468-73). Even if this was an unreasonable strategic move, there is no reasonable probability that this failure to impeach the victim with her prior inconsistent statement affected the outcome of the trial.

During direct examination, the victim testified that she had little "familiarity with weapons." (Id. at 438). When asked whether she remembered the stock of the weapon that she saw during the crime, she responded "Vaguely, I think it was wood, but I'm not - " (Id.). When asked whether she recalled if the barrel of the weapon was "short, medium, [or] long," she answered "I don't know. I don't remember." (Id.). She testified that she was unable to conclusively identify any firearm as the weapon that was pointed at her during the crime (Id. at 444). The best she could offer was that the guns and the stock of the guns found in Petitioner's home and entered into evidence appeared similar to the gun pointed at her during the crime (Id. at 443-44).

The victim's testimony regarding the guns was equivocal. Further, during closing argument, defense counsel implicitly minimized the significance of the victim's testimony regarding the guns by arguing that "[t]here's no link between [Petitioner] and those rifles other than the statement that the detectives say he made." (Id., Vol. V at 920). Moreover, there was other substantial evidence linking Petitioner to the rifles. Both Detective Rockhill and Detective Adan testified that Petitioner admitted to them that the rifles found under the sofa in his house were the weapons used during the crime (see Ground Eleven, *infra*).

In light of this testimony, it is objectively reasonable to conclude that there was no reasonable probability that impeaching the victim with her somewhat equivocal prior statement that the stock of the weapon "looked metal to me" (see Respondent's Exh 5 at record page 34) would have changed the outcome of the trial. Petitioner, therefore, fails to establish that he was prejudiced by

any alleged error regarding a failure to impeach the victim with this relatively minor inconsistent statement.

The state courts' denial of this ineffective assistance of counsel claim was not contrary to, or an unreasonable application of *Strickland*, nor was it based on an unreasonable determination of the facts.  Accordingly, Ground Ten does not warrant relief.

**c. Ground Eleven**

In Ground Eleven, Petitioner asserts that counsel was ineffective in failing to move for a mistrial when the State failed to "tie up" the gun evidence.  Petitioner raised this claim in Ground Seven of his 3.850 motion (Respondent's Ex. 5 at record pages 37-40).  In summarily denying the claim, the state post conviction court stated:

> In ground 7 Defendant argues counsel was ineffective for failure to move for a mistrial when the State did not "tie up" the gun evidence. Defendant points to the same inconsistencies in Jennifer Simon's testimony that are highlighted in ground 6 of his motion. He argues there was insufficient evidence to show the guns found in Defendant's home were the same ones used during the robbery. (See motion, pages 28—31, attached.)

> During the State's direct examination of Jennifer Simon defense counsel objected to the prosecutor's line of questioning. The following conversation occurred during a bench conference.

> > MR. PRUNER: Okay. Um, do you remember the stock of the weapon? The — the butt part of it, for lack of a better phrase? Do you remember that at all?

> > MS. SIMON: Vaguely. I think it was wood, but I'm not —

> > MR. PRUNER: And the barrel of this weapon, did it appear short, medium, long?

> > MS. SIMON: I don't know. I don't remember.

> > MR. PRUNER: Okay.

MR. FRASER: Can we approach your Honor?

THE COURT: Sure.

[BENCH CONFERENCE COMMENCED]

MR. PRUNER: What I'm intending to do is, um — [. . .] - is, um, show her what's been marked for identification as State's Exhibits 13(C) and (D), two long barreled, um, .22 caliber rifles that were, um, taken from Mr. Murray's home during the search warrant on June 22, 2001, which I'll later connect up to the appropriate witnesses who conducted the search; um, and that Mr. Murray, in his verbal statement to Detective Rockhill, indicated these were the weapons that were, um, brought that night in the car that he got into by other participants; that Lucious Williams asked him — or one of the others asked him to hold that night; that these were the guns that were used that night.

THE COURT: Uh-hum.

MR. PRUNER: Um, he's disowning the fact that he used 'em, and so my intention is to show her these and ask her, um, "I'm showing you these weapons, can you tell us whether they appear similar or dissimilar to what you saw that night?" [...]

MR. FRASER: Well, I—I—see that I didn't talk to her earlier, but I just object to confronting her with these rifles—because she's getting a little bit emotional here—confronting her with these emotional—these rifles, even though—because they look similar over at the bench... [...]

MR. PRUNER: It's—it's my position it's corroborative of, um, Mr., um, Murray's statement to the police, which is hotly contested in this case, and it's probative value is far greater; it's not substantially outweighed by the prejudicial value.

MR. FRASER: Oh, it is converted—controverted that he spoke to the police and told them those were the guns.

THE COURT: Well, who's gonna controvert it? Mr.— Mr. Murray's gonna —

MR. FRASER: Maybe.

24

THE COURT: Okay. Well, that's fine. That's—that's a question for the jurors to resolve. As long as you are going to tie it up that this — these are the guns that, um —

MR. PRUNER: Yes, I have the crime scene technician outside, um, who actually took the guns and placed them into evidence; and Henry Duran, who was present during the search warrant, can do that too.

THE COURT: Okay. Well, if for some reason he doesn't, you can move for a mistrial later on.

MR. FRASER: Okay.

THE COURT: Okay.
MR. FRASER: I—I'm not agreeing, I just —

THE COURT: Oh, I know you're not agreeing; that's clear. [...] Objection's overruled.

(See 3 December 2002 transcript, pages 438—440 and 441—442, attached.)

During its direct examination of the victim, the State presented two rifles (State's Exhibits 13(C) and 13(D)) and asked Ms. Simon whether they were similar to the gun used during the robbery. She indicated they were. (See 3 December 2002 transcript, pages 443—444, attached.) Lucious Williams later testified that Defendant exited his home on 12 May 2001 holding a .22 caliber rifle. (See 4 December 2002 transcript, pages 764—765, attached.) Detective Duran ultimately identified State's Exhibits 13(C) and 13(D) as the two .22 caliber rifles he removed from Defendant's home. (See 4 December 2002 transcript, page 667, attached.)

Detective Rockhill testified regarding his interview with Defendant on 22 June 2001 during which Defendant indicated his co-defendants asked him to store the rifles used during the robbery in Defendant's home. Defendant stated he took the rifles into his home, along with a box of bullets, and put them under the sofa. (See 3 December 2002 transcript, pages 593—594, attached.) Detective Adan, who was also present during Defendant's interview, testified Defendant told him the guns found under his sofa were the same ones used in the commission of the robbery of Jennifer Simon and Eddie George on 12 May 2001. (See 4 December 2002 transcript, page 732, attached.)

The Court notes both the State and the defense elicited a considerable amount of testimony regarding the rifles used during the robbery. The jury had an opportunity to hear all of the evidence summarized above. It is a function of the jury to weigh the

credibility of each witness to determine the ultimate guilt or innocence of any defendant. See Hertz v. State, 803 So. 2d 629, 647 (Fla. 2001). The Court is of the opinion that the State proffered sufficient evidence to ultimately "tie up" its theory regarding whether the guns found in Defendant's home were the same ones used to rob Jennifer Simon and Eddie George.  There is no indication counsel was in a position to move for a mistrial. His performance was not deficient under the circumstances. **Defendant is not entitled to relief on ground 7**.

(Respondent's Exh 6 at record pages 73-77) (emphasis in original).

The state post conviction court found that the State had presented "sufficient evidence to ultimately 'tie up' its theory regarding whether the guns found in Defendant's home were the same ones used" during the robbery.  Therefore, the court determined that a motion for mistrial based on this issue would have been denied.  Consequently, because Petitioner failed to show deficient performance or prejudice arising from counsel's failure to move for a mistrial, his ineffective assistance of counsel claim lacked merit.

This Court must defer to the state post conviction court's reasonable factual finding that the State had presented sufficient evidence showing that the guns found in Petitioner's home were the ones used during the robbery.  Co-defendant Lucious Williams testified that when Petitioner walked out of his house prior to the robbery, Petitioner was carrying a long-barrel rifle (Respondent's Exh 21, Vol. IV at 764-65).   After the robbery, during a search of Petitioner's house, Detective Duncan discovered two rifles under a couch (Id. at 662-68).  Detective Adan testified that Petitioner admitted to him that the rifles recovered from Petitioner's house were the ones used during the robbery (Id. at 732). Detective Rockhill testified that Petitioner told him that he took the rifles that were used during the crime into his house, and put them under a sofa (Id., Vol. III at 593-94).  Petitioner has failed to rebut by clear and convincing evidence the presumption of correctness of the state court's factual finding that the State "tied up" the gun evidence.

26

The state court has answered the question of what would have happened had defense counsel moved for a mistrial on the ground that the State failed to "tie up" the gun evidence – the motion would have been denied.  Consequently, Petitioner has failed to establish deficient performance or prejudice.[12]  *See e.g., Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (Alabama Court of Criminal Appeals had already answered the question of what would have happened had counsel objected to the introduction of petitioner's statements based on state decisions; the objection would have been overruled; therefore, counsel was not ineffective for failing to make that objection).

The state courts' denial of Petitioner's ineffective assistance of counsel claim was not contrary to, or an unreasonable application of *Strickland*, nor was it based on an unreasonable determination of the facts.  Accordingly, Ground Eleven does not warrant relief.

**d. Ground Twelve**

In Ground Twelve, Petitioner complains that counsel was ineffective in failing to contest the validity of the waiver of his *Miranda* rights.  Specifically, Petitioner asserts that counsel should have argued that the *Miranda* rights waiver form provided to Petitioner prior to the police questioning him did not adequately advise him of his right to have an attorney present during questioning.  The waiver form provided to Petitioner stated in pertinent part that "[y]ou have the right to talk to a lawyer before answering any questions" and "[y]ou have the right to use any of these rights at any time during this interview." (Dkt. 1 at docket page 30).  Petitioner argues that "advising a suspect. . .of the right to talk to a lawyer before answering any questions, is simply not the same as advising

---

[12]Federal courts "will grant [habeas] relief if. . .a state trial judge's erroneous admission of evidence makes a petitioner's trial 'so fundamentally unfair that the conviction was obtained in violation of the due process clause of the fourteenth amendment[.]'"  *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1355 n.8 (11th Cir. 2005) (quoting *Thigpen v. Thigpen*, 926 F.2d 1003, 1012 (11th Cir. 1991)). Petitioner has not alleged or established that the admission of the victim's testimony regarding the guns rendered the trial fundamentally unfair.

him of his undeniable right to have an attorney present during that questioning." (Id. at docket page 32).

Petitioner raised this claim in Ground Eight of his 3.850 motion (Respondent's Exh 5 at 41-45).  In denying the claim, the state post conviction court stated in pertinent part:

> The Fourth District Court of Appeal recently visited this issue.  That Court determined that although the defendant was not expressly told he could have an attorney present "during" questioning, the language included in the waiver was "the functional equivalent of that required in *Miranda*." [FN].  Rather than look for the exact language supplied in *Miranda*, the District Court questioned whether the warning was sufficient to "adequately fulfill *Miranda's* substantive requirements." It ultimately determined that the warning in question was sufficient for a defendant to infer he had a right to have an attorney present during the interrogation.  Canete v. State, 921 So. 2d 687 (Fla. 4th DCA 2006).
>
> Detective Rockhill testified that he specifically read Defendant each of his rights and would elicit a response after each sentence as to whether Defendant understood.  Defendant was then asked to sign the form on the bottom after he indicated he understood each sentence.  (See 3 December 2002 transcript , page 586, attached.).
>
> The same procedure occurred when police officers reviewed the *Miranda* waiver with the defendant in Canete.  Id. In addition, the Court notes the particular form used in the instant case states "you have the right to use any of these rights at any time during this interview."  There is no indication counsel was in a position to object to the constitutionality of the Tampa Police Department *Miranda* waiver (Form 310). Counsel's performance was not deficient under the circumstances. **Defendant is not entitled to relief on ground 8**.
>
> > [FN] The *Miranda* waiver at issue in Canete states in pertinent part: "you have the right to speak to an attorney, have an attorney present here before we make any questions, do you understand? [. . .] If you decide to answer questions now, without an attorney present, you still have the right not to answer my questions at any time until you can speak with an attorney, do you understand? [. . .] Knowing and understanding your rights as I have explained [them] to you, are you agreeable to answer my questions without an attorney present?" Canete v. State, 921 So. 2d 687 (Fla. 4th DCA 2006).

(Respondent's Exh 6 at record pages 77-78) (emphasis in original).

Respondent correctly argues that the issue underlying this ineffective assistance of counsel claim has "been resolved by the United States Supreme Court against [Petitioner]." (Dkt. 19 at 41). In *Florida v. Powell*, 130 S.Ct. 1195 (2010), law enforcement officers informed Powell that he had "the right to talk to a lawyer before answering any of [their] questions" and "the right to use any of [his] rights at any time [he] want[ed] during th[e] interview" *Id.*, 130 S.Ct. at 1204-05, the same warnings given to Petitioner in the instant case. The Court held that the two warnings, in combination, "reasonably conveyed Powell's right to have an attorney present, not only at the outset of the interrogation, but at all times." *Id* at 1205.

At least one reasonably competent attorney could conclude that the *Miranda* warnings reasonably conveyed Petitioner's right to consult with a lawyer and to have the lawyer with him during the interrogation. *See Harvey v. Warden, Union Correctional Institution*, 629 F.3d 1228 (11th Cir. 2011) (a petitioner receives ineffective assistance where trial counsel's error was so egregious that no reasonably competent attorney would have acted similarly) (citations omitted). Consequently, Petitioner cannot show either deficient performance or resulting prejudice from counsel's foregoing a challenge to the *Miranda* warnings on the ground that Petitioner was not adequately advised of his right to have an attorney present during the interrogation.

The state courts' rejection of this claim was not contrary to or an unreasonable application of federal law as determined by the United States Supreme Court, nor was the ruling based on an unreasonable determination of the facts in light of the evidence presented in the state court. Accordingly, Ground Twelve does not warrant habeas relief.

**e. Ground Fourteen**

In Ground Fourteen, Petitioner asserts that the cumulative effect of counsel's errors deprived

him a fair trial.  In *Morris v. Sec'y Dep't of Corr.*, 677 F.3d 1117 (11th Cir. 2012), the Eleventh

Circuit Court of Appeals stated:

> Finally, Morris claims that cumulative trial court errors deprived him of his Sixth Amendment right to a fair trial.  "The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v. Baker*, 432 F.3d 1189, 1223 (11th Cir. 2005) (internal quotation marks omitted). We address claims of cumulative error by first considering the validity of each claim individually, and then examining any errors that we find in the aggregate and in light of the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial. *See United States v. Calderon*, 127 F.3d 1314, 1333 (11th Cir. 1997).
>
> Plainly, Morris's cumulative error claim must fail. As demonstrated above, none of Morris's individual claims of error or prejudice have any merit, and therefore we have nothing to accumulate. This Court has made clear that where "[t]here [is] no error in any of the [trial] court's rulings, the argument that cumulative trial error requires that this Court reverse [the defendant's] convictions is without merit." *United States v. Taylor*, 417 F.3d 1176, 1182 (11th Cir. 2005); *see also United States v. Waldon*, 363 F.3d 1103, 1110 (11th Cir. 2004); *United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984).

*Id.* at 1132. As all of Petitioner's individual ineffective assistance claims are without merit, his

cumulative error claim must likewise fail. *See also, Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th

Cir. 1987) (Petitioner could not obtain habeas relief through aggregation of individual meritless

claims he had averred; twenty times zero is zero); *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th

Cir. 1998) ("Cumulative error analysis applies where there are two or more actual errors; it does not

apply to the cumulative effect of non-errors."), *cert. denied*, 526 U.S. 1025 (1999).

Petitioner fails to demonstrate how the state courts' denial of his cumulative error claim is

contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, Ground

Fourteen does not warrant relief.

**Ground Seven**

In Ground Seven, Petitioner complains that counsel was ineffective in failing to file a motion in limine to exclude the victim from testifying that she was able to determine the masked perpetrators' race by the "dialect" they used during the robbery. Petitioner raised this claim in Ground Two of his 3.850 motion (Respondent's Exh 5 at record pages 19-21). Following the evidentiary hearing, the state post conviction court denied the claim and stated:

> In ground two of Defendant's Motion for Postconviction Relief, Defendant argues counsel was ineffective for failure to file a motion in limine to exclude specific testimony proffered by the victim, Jennifer Simon. Specifically, Defendant contends counsel should have prevented the State from questioning Ms. Simon regarding her ability to discern the race of the masked robbers based on a specific "dialect" they used during the robbery. He argues such testimony led the jury to draw "improper inferences" when the victim already indicated she could not specifically identify the perpetrators because they wore masks and gloves.
>
> At the evidentiary hearing, counsel testified that he did not object to the witness's testimony or comment on the dialect used because it was proper lay opinion testimony. (See Transcript, p. 26, attached). Counsel testified that during a trial it is proper for a witness to identify a defendant based on race or ethnicity, based on an accent, dialect, or speech. (See Transcript, p. 26, attached). Counsel's testimony reflects that there would be no valid basis for a motion in limine as the statements were proper. (See Transcript, p. 26, attached).
>
> Based upon this testimony presented at the evidentiary hearing, the Court finds the testimony presented by defense counsel highly credible. *Smith v. State*, 697 So. 2d 991, 992 (Fla. 4th DCA 1997) (stating that following an evidentiary hearing the finder of fact can rely upon testimony it finds to be credible). Furthermore, "counsel's strategic decisions will not be second-guessed on collateral attack." *Johnson v. State*, 769 So. 2d 990, 1001 (Fla. 2000). Moreover, "[s]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." *Occhicone v. State*, 768 So. 2d 1037, 1048 (Fla. 2000). Therefore, the Court finds that it was counsel's strategic decision not to file a motion in limine because the witness's statements were proper. As such, the Defendant is not entitled to relief on ground two of his Motion for Postconviction Relief.

(Respondent's Exh 15 at record pages 581-82).

During the evidentiary hearing, Petitioner's trial attorney testified that he did not file a motion in limine because the victim's opinion as to the race of the perpetrators based on their speech or dialect, was appropriate lay opinion testimony (Respondent's Exh 14 at record page 648). The state post conviction court found defense counsel's testimony credible, and that he made a strategic decision not to file a motion in limine because, in his experience, it is proper for a witness to identify a defendant's race or ethnicity based on an accent, dialect, or speech. The state court's credibility determination, and factual determination that counsel made a tactical decision not to file a motion in limine, are presumed to be correct unless Petitioner rebuts the presumption of correctness by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); *Coulter v. Herring*, 60 F.3d 1499, 1503 (11th Cir. 1995) (applying the statutory presumption of correctness under § 2254(d) to the state court's credibility determination), *cert. denied*, 516 U.S. 1122 (1996); *Provenzano v. Singletary*, 148 F.3d 1327, 1330 (11th Cir. 1998) ("The question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact, and a state court's decision concerning that issue is presumptively correct."). Petitioner fails to present a basis for rejecting the state court's credibility and factual determinations.[13]

In Florida, "identification testimony is admissible where the witness has not seen the attacker's face." *State v. Fischer*, 387 So. 2d 473, 475 (Fla. 5th DCA 1980). "A witness may give evidence as to a person's identity from any facts that lead him to believe he knows the identity of the person in question and may base his conclusion on size, manner of walk, tone of voice or any mark or peculiarity of the person being identified." *Simon v. State*, 209 So. 2d 682, 683 (Fla. 3d DCA

---

[13]The Court notes that Petitioner does not contend that defense counsel's decision to forego a motion in limine was not a tactical one (see Dkt. 24 at 6-7). Instead, he argues that the strategy was "patently unreasonable." (Id.).

1968).  "Section 90.701, Florida Statutes (1979), allows opinions of lay witnesses. . .when based upon what the witness has 'perceived.'"  *Barnes v. State*, 415 So. 2d 1280, 1282 (Fla. 2d DCA1982).  At trial, the victim gave her opinion that the perpetrators were "African American" based on what she perceived during the robbery, to wit, the perpetrators' calling the other victim "'nigger' over and over," and speaking "in 'Ebonics.'" (Respondent's Exh 21, Vol. II at 451)*.  See, e.g., United States v. Card*, 86 F. Supp. 2d 1115, 1116 (D. Utah 2000) ("[T]here is no *per se* preclusion with regard to a lay witness's opinion as to whether a person's voice has characteristics of a particular nature.");  *Clifford v. Chandler*, 333 F.3d 724, 731 (6th Cir. 2003) (rejecting the notion that "the mere identification of an individual's race by his voice will always result in unconstitutional prejudice"),  *abrogated on other grounds by Wiggins v. Smith*, 539 U.S. 510, 534-38 (2003)).

"[S]trategic choices are virtually unchallengeable."  *Provenzano*, 148 F.3d at 1332 (citations and internal quotation marks omitted).  "In order to show that an attorney's strategic choice was unreasonable, a petitioner must establish that no competent counsel would have made such a choice." *Id*.  Petitioner has failed to show that trial counsel's decision not to file a motion in limine was a course no competent counsel would have taken under the circumstances. Therefore, defense counsel's tactical decision not to file a motion in limine cannot be deemed unreasonable trial strategy.  Consequently, Petitioner fails to show deficient performance.

Further, Petitioner has not shown prejudice.  First, the state court found that there was "no valid basis for a motion in limine as the [victim's] statements were proper." (Respondent's Exh 15 at record page 582).  Therefore, the state court has answered the question of what would have happened had defense counsel filed a motion in limine – the motion would have been denied.  *See Callahan*, 427 F.3d at 932.  Second, Petitioner has not shown that a reasonable probability exists that

the outcome of the case would have been different had counsel filed a motion in limine.

The state courts' rejection of this claim was neither contrary to nor an unreasonable application of *Strickland*, nor was it based on an unreasonable determination of the facts. Accordingly, Ground Seven does not warrant relief.

**Ground Nine**

In Ground Nine, Petitioner asserts that counsel was ineffective in failing to call Timothy Hinkeldire as a witness to rebut the testimony of co-defendant Lucious Williams.  Petitioner asserts that prior to trial, he mailed a letter to defense counsel in which he enclosed a letter from Hinkeldire. In Hinkeldire's letter, he stated that while he was incarcerated with Williams, Williams stated (in pertinent part) that he "will not go to prison again;" "will do or say anything to stay out;" "would falsely state that the gun was in the hands of [Petitioner];" "was bent on cutting the first deal with the state because by doing so he would be more credible in the eyes of the jury;" and "had negotiated a 7 year deal in this case to testify against his co-defendants."  (Respondent's Exh 5 at record page 29).  Hinkeldire also stated in the letter that Williams had said that "no one ever ordered the victims into the water nor did anyone yell at them."  (Id.).

Petitioner raised this claim in Ground Four of his 3.850 motion (Respondent's Exh 5 at record pages 25-29).  After the evidentiary hearing, the state post conviction court denied the claim and stated:

> In ground four of Defendant's Motion for Postconviction Relief, Defendant argues counsel was ineffective for failure to call a rebuttal witness to impeach Lucious Williams' testimony. Mr. Williams, a co-defendant in this case, testified the Defendant, James Murray, owned the gun used during the robbery and maintained control over the weapon during the events that occurred on May 12, 2001. Defendant argues Mr. Timothy Hinkeldire would have testified Lucious Williams chose to implicate his codefendants so that he would not go to prison for his involvement in

this case. Defendant alleges further that Mr. Hinkeldire overheard Mr. Williams state he would falsely testify that the gun was "in the hands of James Murray."

    The testimony at the hearing indicates counsel made a strategic decision not to call witness Hinkeldire. (See Transcript, p. 27, attached). The testimony further indicates counsel chose not to call Hinkeldire because other evidence contradicted his statements and that it was unlikely that the jury would believe his statements. (See Transcript, pp. 27-28, attached). In regards to Defendant's claim that Hinkeldire heard Mr. Williams implicate the Defendant, counsel testified it was irrelevant to the case because of the principal rule. (See Transcript, pp. 28-29, attached).

    Based upon this testimony presented at the evidentiary hearing, the Court finds the testimony presented by defense counsel highly credible. *Smith v. State*, 697 So. 2d 991, 992 (Fla. 4th DCA 1997) (stating that following an evidentiary hearing the finder of fact can rely upon testimony it finds to be credible). Furthermore, "counsel's strategic decisions will not be second-guessed on collateral attack." *Johnson v. State*, 769 So. 2d 990, 1001 (Fla. 2000). Moreover, "[s]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." *Occhicone v. State*, 768 So. 2d 1037, 1048 (Fla. 2000). Therefore, the Court finds that it was counsel's strategic decision not to call Mr. Hinkeldire during trial. As such, the Defendant is not entitled to relief on ground four of his Motion for Postconviction Relief.

(Respondent's Exh 15 at record pages 584-85).

    The state post conviction court found defense counsel's testimony credible, and that he made a strategic decision not to call Hinkledire as a witness. The state court's credibility determination, and factual determination that counsel made a tactical decision are presumed to be correct unless Petitioner rebuts the presumption of correctness by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); *Coulter*, 60 F.3d at 1503; *Provenzano*, 148 F.3d at 1330. Petitioner fails to present a basis for rejecting the state court's credibility and factual determinations.[14]

    During the evidentiary hearing, Petitioner's trial attorney explained his reasons for not calling

---

[14]Petitioner does not contend that defense counsel's decision not to call Hinkeldire as a witness was not a tactical one (see Dkt. 24 at 7). Instead, he argues that if it was a strategic decision, it was "patently unreasonable." (Id.).

Hinkeldire as a witness, and this testimony was deemed credible. Petitioner's trial attorney testified that he chose not to call Hinkeldire to testify because he had an extensive criminal history that included over 20 felony convictions (Respondent's Exh 14 at record pages 637, 640). He also testified that Hinkeldire's letter inaccurately stated that Williams had negotiated a 7 year prison deal with the state, when Williams actually received 25 years imprisonment (Id. at 639-40). Further, counsel testified that Hinkeldire's assertion that Williams stated that he was going to falsely claim that Petitioner held the gun during the robbery was "practically irrelevant" because of the "principal rule."[15] (Id. at 639, 651). Moreover, counsel spoke to Hinkeldire on the telephone, and found Hinkeldire's "version of reality kind of incredible." (Id. at 641). Counsel did not believe that "a jury would believe anything [Hinkeldire] had to say." (Id.).

Petitioner has not demonstrated that defense counsel's decision not to call Hinkeldire as a witness was anything other than reasonable trial strategy. "[W]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995). Disagreements by a defendant with counsel's tactics  or strategies will not support a claim of ineffective assistance of counsel. A habeas petitioner must overcome a presumption that the challenged conduct of one's counsel was a matter of strategy. *Strickland*, 466 U.S. at 689; *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). "Even if many reasonable lawyers would not have done as defense counsel did

---

[15]Even if Petitioner did not hold the gun during the robbery and felony murder, he still could have been convicted as a principal to the crimes.  "Under [Florida] law, both the actor and those who aid and abet in the commission of a crime are principals in the first degree. To be guilty as a principal for a crime physically committed by another, one must intend that the crime be committed and do some act to assist the other person in actually committing the crime." *Staten v. State*, 519 So. 2d 622, 624 (Fla. 1988) (citations omitted).  The Court notes that Hinkeldire does not state in his letter that Williams said Petitioner did not participate in the robbery/felony murder.

at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." *Rogers v. Zant*, 13 F.3d at 386 (11th Cir. 1994). Under the circumstances in this case, the Court cannot find that no reasonable lawyer would have decided not to call Hinkeldire to testify on behalf of the defense. Therefore, Petitioner has failed to show deficient performance by counsel.

Moreover, Petitioner has not shown prejudice because he has failed to demonstrate that there is a reasonable probability that, but for counsel's "alleged" errors, the outcome of the trial would have been different.

Petitioner has not demonstrated that the state courts' adjudication of this ineffective assistance claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established" Supreme Court law, or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, Ground Nine does not warrant habeas corpus relief.

**Ground Thirteen**

In Ground Thirteen, Petitioner complains that counsel was ineffective in failing to request a curative instruction after opening the door to prejudicial testimony. During cross-examination of Detective Rockhill, defense counsel asked "So there is simply — the arrest of Mr. Murray is relying simply on the word of Mr. Williams; is that right?" Det. Rockhill answered "And Tremayne Hall[.]" (Respondent's Exh 21, Vol. III at 618). Petitioner asserts that defense counsel's question allowed Det. Rockhill to identify another person who allegedly implicated Petitioner in the crime.

Following the above cited testimony, a bench conference ensued during which defense counsel moved for a mistrial based on Det. Rockhill's answer. The motion for mistrial, however,

was denied (Id. at 619, 627).  Subsequently, the trial judge state in pertinent part "Now if you like

me to make some sort of curative instruction, um, that . . .is appropriate then I - - then I'll, certainly,

consider it.  But I don't think that it - - that - - that the way the question was framed, um, would - -

would leave the detective to answer in any - - any other way, other than - - than the way he did. . .

.Now, what would you like me to do, or consider doing, Mr. Fraser, with regards to instructing the

jury?"  (Id. at 627). Defense counsel responded "Um, nothing."  (Id.).

Petitioner raised this claim in Ground Nine of his 3.850 motion (Respondent's Exh 5 at

record pages 46-51).  Following the evidentiary hearing, the state post conviction court denied the

claim and stated:

> In ground nine of Defendant's Motion for Postconviction Relief, Defendant
> argues counsel was ineffective for failure to request a curative instruction after
> improperly opening the door for inadmissible testimony.
>
> A review of the evidentiary hearing transcript reflects that counsel had no
> reason to ask for a curative instruction because it was not required for appellate
> review, and further, such a request would have highlighted such testimony to the jury.
> (See Transcript, p. 30, attached).
>
> Based upon this testimony presented at the evidentiary hearing, the Court
> finds the testimony presented by defense counsel highly credible. *Smith v. State*, 697
> So. 2d 991, 992 (Fla. 4th DCA 1997) (stating that following an evidentiary hearing
> the finder of fact can rely upon testimony it finds to be credible). Furthermore,
> "counsel's strategic decisions will not be second-guessed on collateral attack."
> *Johnson v. State*, 769 So. 2d 990, 1001 (Fla. 2000). Moreover, "[s]trategic decisions
> do not constitute ineffective assistance of counsel if alternative courses have been
> considered and rejected and counsel's decision was reasonable under the norms of
> professional conduct." *Occhicone v. State*, 768 So. 2d 1037, 1048 (Fla. 2000).
> Therefore, the Court finds that it was counsel's strategic decision not to request a
> curative instruction. As such, the Defendant is not entitled to relief on ground nine
> of his Motion for Postconviction Relief.

(Respondent's Exh 15 at record pages 585-86).

The state post conviction court found defense counsel's testimony credible, and that he made

a strategic decision not to request a curative instruction because it was not required for appellate review of Det. Rockhill's testimony, and it would have only further highlighted that testimony. These credibility and factual determinations are presumed to be correct unless Petitioner rebuts the presumption of correctness by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); *Coulter*, 60 F.3d at 1503; *Provenzano*, 148 F.3d at 1330. Petitioner fails to present a basis for rejecting the state court's credibility and factual determinations.[16]

In light of the facts of the instant case, defense counsel's tactical decision not to request a curative instruction because it would highlight Det. Rockhill's testimony cannot be deemed unreasonable trial strategy. *See, e.g., Werts v. Vaughn*, 228 F.3d 178, 205 (3d Cir. 2000) ("Counsel's decision not to draw attention to the remarks [by seeking a curative instruction] cannot be deemed unreasonable trial strategy in light of the facts of this case."). Petitioner has failed to show that trial counsel's decision not to request a curative instruction was a course no competent counsel would have taken under the circumstances. Consequently, Petitioner fails to show deficient performance.

Further, Petitioner has not shown prejudice. First, he does not show that a curative instruction would have been granted had counsel requested it. Although the trial judge raised the possibility of a curative instruction *sua sponte*, it was apparent from her comment that "I don't think that. . .the way the question was framed. . .would leave the detective to answer in. . .any other way, other than. . .the way he did," that she did not believe a curative instruction was warranted. Second, Petitioner has not shown a reasonable probability exists that the outcome of the trial would have been different had counsel requested a curative instruction.

---

[16]The Court notes that Petitioner does not contend that defense counsel's decision to forego a curative instruction was not a tactical one (see Dkt. 24 at 8). Instead, he argues that the strategy was not reasonable (Id.).

The state courts' rejection of this claim was neither contrary to nor an unreasonable application of *Strickland*, nor was it based on an unreasonable determination of the facts. Consequently, Ground Thirteen does not warrant relief.

**ACCORDINGLY**, it is **ORDERED** that the Petition for Writ of Habeas Corpus is **DENIED** (Dkt. 1). The **Clerk** shall enter judgment against Petitioner, and close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. See 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Petitioner cannot make the requisite showing in these circumstances. Finally, because Petitioner is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**DONE and ORDERED** in Tampa, Florida, on ⸺September 26ᵗʰ⸺, 2012.

⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺
JAMES D. WHITTEMORE
United States District Judge

SA:sfc
Copy to: Petitioner *pro se*
            Counsel of Record

40